NATHAN HILLMAN *vs.* ALVIN SLATER. May 3, 1982. The plaintiff attorney (Hillman) brought an action in contract against the defendant client (Slater) to recover fees that Hillman claimed to be due from Slater for services rendered in defending Slater in a suit commenced by his former lawyers to enforce an attorney's lien against Slater's share of a money judgment in a land damage action. The jury found for Hillman, and Slater appeals. He alleges that the verdict is the result of prejudicial remarks and innuendo, inadmissible evidence, and erroneous jury instructions, all concerning his purported wealth. Slater also claims error in the denial of his motion of a new trial.

1. The fact that all of Slater's former attorneys viewed him as a man of wealth was brought home to the jury on both direct and cross-examination of Hillman. In addition to the fact that Slater's counsel solicited much of

the information of which he now complains, we note that in those instances where Hillman's answers could be deemed unresponsive, Slater's counsel either failed to object, see Mass.R.Civ.P. 46, 365 Mass. 811 (1974), or to move to strike the allegedly offensive answers. See *Commonwealth* v. *Miskel*, 364 Mass. 783, 792 (1974). Further, the fact that Slater was a "mortgage money lender" who had a home in Palm Beach, Florida, was not immaterial to the present action. See *Green* v. *Richmond*, 369 Mass. 47, 59 (1975). The suit to enforce the attorneys' lien concerned the fact that Slater held an almost one hundred percent mortgage on the property which was the subject of the land damage action; Hillman's correspondence and statements of account which detailed his efforts on Slater's behalf and which were received in evidence were directed to Slater at a Palm Beach, Florida, address. Compare *Evans* v. *Multicon Constr. Corp.*, 6 Mass. App. Ct. 291, 296-297 (1978).

2. The derogatory remark about Slater which was made to Hillman by Slater's prior attorneys while they were discussing a possible settlement of the attorneys' lien action and which was repeated to the jury by Hillman when he related the otherwise pertinent substance of that conversation was the subject of an immediate and adequate instruction to the jury as to the admissibility of the conversation for nontestimonial purposes. Cf. *Regan* v. *John J. Amara & Sons*, 348 Mass. 734, 737 (1965). See generally Liacos, Massachusetts Evidence 262-266 (5th ed. 1981).

3. The judge correctly precluded Slater's attorney from cross-examining Hillman on immaterial and in many instances repetitious points concerning the details of the land damage action. See *St. Germain & Son* v. *Taunton Redevelopment Authy.*, 4 Mass. App. Ct. 46, 53-54 (1976). Hillman was questioned at length about the nature and extent of the services rendered on Slater's behalf, and it is obvious from the remarks of Slater's attorney at the side bar that much of the information now claimed to have been wrongfully excluded was not within the scope of the judge's narrow limitation on cross-examination and, in fact, had already been testified to by Hillman. See *Davis* v. *Hotels Statler Co.*, 327 Mass. 28, 29-30 (1951).

4. The claim of error in the judge's jury instruction that wealth "may be important in regards to credibility, appearance, demeanor or intelligence" is not properly before us as there is nothing in the record appendices to show compliance with Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). *Kaltsas* v. *Duralite Co.*, 4 Mass. App. Ct. 634, 638-639 (1976). We note in passing, however, that the statement was preceded and followed by admonitions and instructions that wealth or the lack of it was immaterial to the outcome of the case, which depended upon whether the parties had an express agreement as to the amount to be paid for Hillman's services or, if not, what was the fair and reasonable value of any services rendered. We think that the obvious import of the allegedly egregious statement was simply that one's entire background and experience is relevant to a determination of an ability to appreciate and to comprehend business dealings and obligations.

5. The judge did not err in denying Slater's motion for a new trial. "Whether to allow or deny a motion for a new trial is a matter for the judge's discretion. We find nothing in the record to indicate that there was an abuse of that discretion or a clear error of law requiring reversal of the judge's decision." *Olson* v. *Ela*, 8 Mass. App. Ct. 165, 171 (1979). (a) Paragraphs 16, 20 and 21 of Slater's answer and paragraph 1 of his amended motion make it readily apparent that the "newly discovered" evidence was available to him prior to trial and was cumulative. *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 495 (1920). Cf. *Posttape Associates* v. *Eastman Kodak Co.*, 68 F.R.D. 323, 326-327 (E.D. Pa. 1975). (b) The jury had before it the parties' fee agreement and Hillman's time and disbursement records. It does not plainly follow (from the facts that the jury found for Slater on counts 1 and 2 and that it awarded Hillman on count 3 less than what he demanded) that the verdict in Hillman's favor was a compromise verdict, viz., one that did not have the approval of all the jurors in that it could have been arrived at "only by the surrender of conscientious convictions upon one material issue by some jurors in return for a relinquishment by others of their like settled opinion upon another issue." *Simmons* v. *Fish*, 210 Mass. 563, 571 (1912).

> *Order denying motion for a new trial affirmed.*

> *Judgment affirmed with double costs.*

*Elizabeth Anne Starrs* for the defendant.
*Robert W. Harrington* for the plaintiff.